UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT JAMES MCCORMACK,<br><br>              Plaintiff,<br><br>v.<br><br>EVEREST NATIONAL INSURANCE COMPANY; CHRISTOPHER E. CALDWELL; RONDA K. NICHOLS; WHITEHEAD, AMBERSON & CALDWELL, PLLC; APRIL DAWSON; DAVE FOSS; DEBRA FROST; LARRY HYNES; JAN EPP; ANITA TRAVIS; SCOTT LOSSMANN; SHIRLEY AUDENS; DEBBIE RICHARDSON; TINA WILLIAMS; JOSEPH CARDONA; THOMAS KIMBERLY; WILLIAM POULSON; ERIN ALDAPE; CATHERINE WHINNERY; RONA SIEGERT; THERESA BALDRIDGE; CHRISTINA BOULAY; PAM SONEN; RANDY BLADES; GARY BARRIER; JILL WHITTINGTON; JOHANNA SMITH; JEFF KIRKMAN; GARRETT COBURN; ALAN STEWART; DAVID WRIGHT; HOWARD YORDY; STAN HOUSE; SABINO RAMIREZ; and TERRY ROSENTHAL,<br><br>              Defendants. | Case No. 1:13-cv-00318-EJL-CWD<br><br>**REPORT AND RECOMMENDATION RE: DOCKET NO. 30, 33, 36, 47** |

Pro se Plaintiff Robert McCormack filed this lawsuit against 35 defendants, alleging a variety of state and federal causes of action. The Court previously dismissed with prejudice McCormack's state law claims against three defendants. The issue before the Court—presented in the form of three motions to dismiss (Dkt. 30, 33, 36) and McCormack's failure to show good cause for not serving 13 of the named defendants—is whether any of McCormack's claims against the remaining Defendants are subject to dismissal.

District Judge Edward J. Lodge has referred all matters in this case to the undersigned. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented therein and that the decisional process would not be significantly aided by oral argument. Dist. Idaho Loc. Civ. R. 7.1. Accordingly, the Court issues this report, recommending that McCormack's Complaint be dismissed with limited leave to amend.

## BACKGROUND

On July 22, 2013, McCormack filed a 50-page Complaint alleging causes of action against four groups of defendants.[1] Due to a lack of subject matter jurisdiction, the Court has dismissed with prejudice McCormack's claims against one of these groups—Christopher Caldwell; Ronda Nichols; and Whitehead, Amberson & Caldwell, PLLC (the

---

[1]     McCormack initially moved to proceed in forma pauperis. (Dkt. 1.) However, the Court found his application contained insufficient information and ordered McCormack to either pay the filing fee or submit a complete application on the proper form. (Dkt. 7.) McCormack opted to pay the fee, and the Court received the full filing fee on October 25, 2013. The Clerk of Court issued summonses for all 35 named defendants on January 27, 2014. (Dkt. 11.) On March 5, 2014, the Court granted McCormack additional time to effect service of process, extending the service deadline to early May of 2014. (Dkt. 16.) To date, 13 of the named defendants have not been served.

"Caldwell Defendants"). (Dkt. 49, *adopting* 48.) The remaining groups of Defendants

consist of:

(1)     Everest National Insurance Company ("Everest");

(2)[2]   April Dawson, Dave Foss, Debra Frost, Larry Hynes, Jan Epp, Anita
        Travis, Scott Lossman, Shirley Audens, Debbie Richardson, Tina
        Williams, Joseph Cardona, Thomas Kimberly, William Poulson,
        Erin Aldape, and Catherine Whinnery (the "Corizon Defendants");
        and

(3)[3]   Rona Siegert, Theresa Baldridge, Christina Boulay, Pam Sonen,
        Randy Blades, Gary Barrier, Jill Whittington, Johanna Smith, Jeff
        Kirkman, Garrett Coburn, Alan Stewart, David Wright, Howard
        Yordy, Stan House, Sabino Ramirez, and Terry Rosenthal (the
        "IDOC Defendants").

McCormack alleges that Everest committed malpractice and was negligent in

evaluating and paying workers' compensation benefits related to a back injury

McCormack sustained while working for Everest's insured, All Valley Concrete. On May

13, 2014, Everest filed a motion to dismiss under Federal Rules of Civil Procedure

12(b)(1) and (6). (Dkt. 30.) Everest contends the Court lacks subject matter jurisdiction

---

[2]     The Complaint identifies these individuals as "Defendants-3." (Dkt. 2 ¶ 4.) The
Complaint further alleges that these individuals are or were "culpable employees contracted by
the Idaho Department of Corrections at and by: Correctional Medical Services/Corizon Medical
Services . . . ." (*Id.*) However, it appears that McCormack lumped IDOC employees into the
group of Corizon Defendants. This is evident from the fact that counsel appearing on behalf of
various IDOC employees represents Audens and Cardona, both of whom are identified as
Corizon employees in the Complaint. Notwithstanding this mix-up, the Court will for present
purposes refer to the group designated "Defenants-3" in the Complaint as the "Corizon
Defendants."

[3]     The Complaint identifies these individuals as "Defenants-4." (Dkt. 2 ¶ 5.) The
Complaint further alleges that these individuals are "working for the Idaho Department of
Corrections at: Idaho State Correctional Institute. . . ." (*Id.*) For present purposes, the Court will
use the term "IDOC Defendants" when referring to the group McCormack identifies as
"Defendants-4."

over McCormack's claims. In the alternative, Everest argues the claims are time-barred and are legally insufficient because Everest owed no legal duty to McCormack.

McCormack brings suit against various employees of the Idaho Department of Correction ("IDOC") under 42 U.S.C. § 1983, alleging violations of his rights to (1) access the courts under the First and Fourteenth Amendments and (2) be free from cruel and unusual punishment under the Eighth Amendment. On May 16, 2014, counsel for the IDOC appeared and filed a motion to dismiss on behalf of 15 IDOC employees—Shirley Audens, Joseph Cardona, Rona Siegart, Theresa Baldridge, Christina Boulay, Randy Blades, Jill Whittington, Jeff Kirkman, Garrett Coburn, Alan Stewart, David Wright, Howard Yordy, Stan House, Sabina Ramirez, and Terry Rosenthal. (Dkt. 33.) These Defendants argue that McCormack's constitutional claims should be dismissed under Rule 12(b)(6) because are legally and factually insufficient. They also argue that McCormack's Eighth Amendment claim is time-barred.

McCormack also brings a § 1983 claim against the Corizon Defendants, alleging they also violated his Eighth Amendment right to be free from cruel and unusual punishment. On June 6, 2014, counsel for Corizon appeared on behalf of three Corizon employees—April Dawson, Catherine Whinnery, and William Poulson—and filed a motion to dismiss under Rule 12(b)(6). (Dkt. 36.) These Defendants' arguments for dismissal are substantially similar to those of the IDOC employees.

On June 17, 2014, McCormack filed a one-page "Response to All Motion Motions to Dismiss." (Dkt. 39.) McCormack "sternly objects" to dismissal of any claims and requests the Court "forward these proceedings to trial." (*Id.*) However, McCormack's

response does not specifically address the arguments raised in the motions to dismiss. In late June and early July of 2014, Everest, the IDOC employees, and the Corizon employees filed reply briefs. All three motions to dismiss are ripe for disposition.

After briefing concluded and without leave of the Court, McCormack, on August 4, 2014, filed a variety of documents that appear to be related to a workers' compensation claim for his back injury. (Dkt. 45.) In response, on August 21, 2014, Everest filed a "Motion to Strike" the documents as untimely. (Dkt. 47.) McCormack has not responded, the time for a response is long past, and, consequently, this motion is also ripe for disposition.

Also before the Court is the question of whether McCormack's claims against 13 named defendants should be dismissed because McCormack has failed to serve them. The Court notified McCormack that his claims against the 13 defendants may be subject to dismissal under Federal Rule of Civil Procedure 4(m) and ordered him to show cause for the failure to serve by December 15, 2014. (Dkt. 50.) McCormack has not responded.

## LEGAL STANDARDS

Pro se complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Therefore, because McCormack proceeds pro se, the Court will construe his pleadings liberally and afford him the benefit of any doubt. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

Everest contends McCormack's claims against it are subject to dismissal under Federal Rule of Civil Procedure 12(b)(1). Dismissal under Rule 12(b)(1) is appropriate if

the Court lacks subject matter jurisdiction over a claim. Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). That is, the Court cannot hear this matter unless McCormack satisfies the Court that some basis for jurisdiction exists. A federal court has subject matter jurisdiction over an action that either arises under federal law, or when there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a) (2013).

Everest, the Corizon employees, and the IDOC employees argue McCormack's claims are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) will be granted when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under this Rule, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, a complaint, or portions thereof, will be dismissed if the "allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations . . . but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. The complaint must plead "enough facts to state a claim of

relief that is plausible on its face." *Id*. at 570. "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982) (citation omitted).

In exercising its discretion to dismiss claims under Rule 12(b)(6), the Court takes into consideration that, in any case, and more so in pro se cases, the law requires that plaintiffs be given an opportunity to amend their pleadings to remedy deficiencies identified in the Court's ruling on a motion to dismiss, unless amendment would be futile. *See Lipton v. Pathogenesis Corp*., 284 F.3d 1027, 1039 (9th Cir. 2002) ("It is not unreasonable that plaintiffs may seek amendment after an adverse ruling, and in the normal course district courts should freely grant leave to amend when a viable case may be presented."); *see also Lopez v. Smith*, 203 F.3d 1122, 1128–30 (9th Cir. 2000) (A pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that they cannot be overcome by amendment, because, while Congress's intent in requiring screening is "to curb meritless lawsuits," meritorious lawsuits should not be "swept away in the process.").

## FACTUAL ALLEGATIONS

For the purposes of the instant motions to dismiss, the Court accepts as true the allegations in the McCormack's Complaint, except where those allegations are contradicted by matters subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1.      **Work-Related Back Injury**

On April 9, 2001, McCormack suffered a work-related back injury while employed by All Valley Concrete, an Idaho corporation.[4] Everest, All Valley Concrete's workers' compensation insurer, accepted McCormack's claim for temporary total disability (TTD) payments. Everest stopped making TTD benefit payments to McCormack on August 8, 2001.

As a result of this denial of benefits, McCormack retained the law firm of Whitehead, Amberson & Caldwell, PLLC (the "Caldwell law firm") to represent him in a workers' compensation action before the Idaho Industrial Commission. McCormack's TTD benefits were reinstated on September of 2001. But, pursuant to a letter request from the Caldwell law firm, Everest began forwarding the benefit checks to the Caldwell law firm. Everest continued to pay the TTD benefits in this manner until February of 2002.

What happened next is not clear from the Complaint. At some point, proceedings related McCormack's workers' compensation claim began before the Idaho Industrial Commission. The Complaint states that the Industrial Commission decided McCormack's claim on July 12, 2006, finding he was eligible for TTD benefits through

_____

[4]      Everest requests that the Court take judicial notice of the fact that All Valley Concrete is incorporated under the laws of Idaho. "[F]acts subject to judicial notice may be considered on a motion to dismiss." *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987). Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of undisputed matters of public record, including articles of incorporation filed with Secretary of the State of Idaho. *See eBay Inc. v. Digital Point Solutions, Inc.*, 608 F.Supp.2d 1156, 1164 n. 6 (N.D. Cal. 2009) (judicially noticing articles of incorporation). The Court has reviewed the relevant public records of the Secretary of the State of Idaho, *available at* http://www.accessidaho.org/public/sos/corp/ C130955.html, and takes judicial notice of them because it is beyond reasonable dispute that All Valley Concrete has filed articles of incorporation in Idaho.

May 30, 2002. (Dkt. 2 ¶ 60.) McCormack claims Everest committed malpractice and negligence by refusing to continue paying TTD benefits to McCormack and by forwarding the benefit checks to the Caldwell law firm.

## 2.    Medical Treatment During McCormack's Incarceration

McCormack began a term of incarceration in the custody of the IDOC on May 19, 2006. Soon after, McCormack sought and received medical care for his continuing back problems. McCormack claims care he received was inadequate and in violation of his Eighth Amendment right to be free from cruel and unusual punishment. This claim centers on the following allegations in the Complaint, which generally do not name the person or persons who treated McCormack.

Starting in June of 2006, unnamed Corizon Defendants prescribed medications to address McCormack's back pain. (Dkt. 2 ¶ 145.) It is largely unclear from the Complaint which medications were prescribed to McCormack, and McCormack does not identify who wrote the prescriptions. The only medication mentioned by name is Clavil, which he alleges was prescribed on June 14, 2006. (*Id.*) According to McCormack, the Clavil "was too much as it was knocking him out for days at a time." (*Id.*)

By August 31, 2006, the Corizon Defendants acknowledged that McCormack suffered from herniated discs. On February 16, 2007, McCormack filed a "Notice of Claim against [the Corizon and IDOC Defendants], for failing to treat his herniated discs." (*Id.* ¶ 146.) The Complaint does not state what, if any, action was taken in response to the Notice of Claim.

On December 29, 2007, McCormack sent a letter to Defendant Rona Seigert, explaining his "medical experience . . . concerning his untreated preexisting back injuries." (*Id.*) Seigert responded on January 17, 2008, "with apropos directives." (*Id.*) One day later, McCormack saw one or more unnamed Corizon Defendants about his back pain and was given a choice of medications. However, McCormack alleges that the Corizon Defendants refused to provide him medications that previously had worked for his back injury. A March 10, 2008 MRI "verified" McCormack's back injury. (*Id.* ¶ 147.) On August 18, 2008, the Corizon Defendants again examined McCormack but gave him "the same song and dance." (*Id.*)

During October of 2008, the Corizon Defendants arranged a consultation between McCormack and a spinal surgeon identified in the Complaint as "Dr. Montalbono." On October 22, 2008, McCormack underwent a lumbar spine MRI without contrast, the results of which "demonstrate[d] a continued curve of injury on the preexisting L3-4, L4-5, and L5-S1 injured areas." (*Id.*) McCormack met with Dr. Montalbono on November 23, 2008, and the doctor requested "additional studies." (*Id.*) The Complaint does not state what the results of these studies were or whether Dr. Montalbono recommended a particular treatment for McCormack's back injury. Rather, McCormack alleges "[t]his type of medical care (shopping for opinions), despite multiple grievances, went on for the remainder of [McCormack's] stay with [the Corizon and IDOC Defendants], until October of 2012 where [the Corizon Defendants] simply lied to [McCormack] by telling him there was no injury which required surgery." (*Id.*)

McCormack's incarceration ended on May 15, 2013. (*Id.* ¶ 29.)

### 3.    McCormack's Litigation During His Incarceration

McCormack alleges that the IDOC Defendants violated his right to access the courts by not providing adequate legal assistance or resources and otherwise interfering with his efforts to litigate. McCormack filed at least five lawsuits during his incarceration. The Complaint details McCormack's frustrations with sending and receiving legal correspondence and obtaining legal assistance from IDOC staff in the Legal Resource Center of an unspecified prison. (*Id.* ¶¶ 151–165.) Although not alleged in the Complaint, the Court takes judicial notice of the following facts concerning the five lawsuits.[5]

First, on January 28, 2008, McCormack filed an action against attorney Christopher Caldwell in the District Court of the Second Judicial District of the State of Idaho, in and for Nez Perce County (Case No. CV08–00736). (Dkt. 13-3.) McCormack alleged Caldwell negligently represented McCormack in connection with McCormack's workers' compensation claim. The state district court dismissed the action in April of 2009, for insufficient service of process. (*Id*. at 13.)

Second, on June 8, 2009, McCormack again filed an action in the Second Judicial District (Case No. CV09–01218) against Christopher Caldwell and the Caldwell law

---

[5]     The IDOC Defendants requested the Court take judicial notice of five lawsuits filed by McCormack. (Dkt. 33-1.) Under Federal Rule of Evidence 201, the Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). The Court finds the existence of the five lawsuits and the filings therein are undisputed matters of public record and therefore takes judicial notice of them. Filings related to four of the lawsuits appear in the record of this case at Docket No. 13-3 to 13-6. The record of the fifth action, Case No. 1:12-cv-00016-EJL, appears in this Court's CM/ECF system and is publicly available via the PACER system.

firm, alleging forgery, fraud, negligence, and mishandling of McCormack's TTD checks. (Dkt.13-4.) The state court dismissed this second action, finding it time-barred under the applicable statute of limitations. (*Id*. at 67.) McCormack appealed the order of dismissal to the Idaho Court of Appeals in March of 2011, and the Court of Appeals affirmed the dismissal in July. (Dkt. 13–2 at 7.)

Third, on March 24, 2010, McCormack filed a fraud action against the Caldwell law firm in this Court (Case No. 1:10-CV-00157-EJL). (Dkt.13-5.) Finding no basis for subject matter jurisdiction, the Court dismissed the case without prejudice on October 28, 2010. (*Id*. at 6.)

Fourth, on June 18, 2012, McCormack filed in this Court an action against the Caldwell Defendants, Everest, and unknown "State government officials" ( Case No. 1:11-CV-00599–BLW). (Dkt. 13-6.) The original Complaint alleged fraud, negligence, and malpractice against Everest and the Caldwell Defendants. (*Id*.) In an Amended Complaint, McCormack also alleged causes of action under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations (RICO) Act. In December of 2012, the Court dismissed the action without providing McCormack any further opportunity to amend. (*Id*. at 32.) The Court found: no subject matter jurisdiction over the fraud, negligence, and malpractice claims; that the relevant defendants were absolutely immune from liability under § 1983; and that McCormack failed to state a RICO claim upon which relief could be granted. McCormack appealed to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit summarily affirmed the Court's judgment dismissing McCormack's case in April of 2013. (*Id*. at 43.)

Fifth, on January 13, 2012, McCormack filed in this Court a lawsuit against various IDOC employees (Case No. 1:12-CV-00016-EJL). This action alleged retaliation for claims of misconduct by prison officials, violations of the First Amendment free exercise clause, as well as violations of the Religious Land Use and Institutionalized Persons Act. The Court conducted an initial review of the Complaint and allowed McCormack to proceed on his claims. After finding McCormack had failed to prosecute his claims, the Court ultimately granted summary judgment in favor of the defendants in July of 2014.

## ANALYSIS

### 1. Failure to Serve

To date, McCormack has not served 13 of the named defendants—Dave Foss, Debra Frost, Larry Hynes, Jan Epp, Anita Travis, Scott Lossmann, Debbie Richardson, Tina Williams, Thomas Kimberly, Erin Aldape, Pam Sonen, Gary Barrier, Johanna Smith. Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

This language has both a mandatory and a discretionary component. The Court must extend the time for service upon a showing of good cause, but the Court has the discretion to either extend the time or dismiss the case if the plaintiff fails to show good cause. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001).

McCormack filed the Complaint in this lawsuit on July 22, 2013. On October 28, 2013—after McCormack opted to pay the filing fee rather than attempt to proceed in forma pauperis—the Court informed McCormack that he was responsible for effecting service of process within 120 days—that is, by February 25, 2014. (Dkt. 9.) On February 20, 2014, McCormack requested an 120-day extension of the service deadline, and the Court found good cause for a 60-day extension. (Dkt. 16.) Thus, McCormack had until April 27, 2014, to serve all defendants in this action.

On November 24, 2014, the Court ordered McCormack to show cause for not serving the 13 Defendants listed above. (Dkt. 50.) The Court directed McCormack to respond by December 15, 2014. The order expressly stated that McCormack's claims against these 13 Defendants would be subject to dismissal for lack of compliance with Federal Rule of Civil Procedure 4(m), unless McCormack showed good cause. McCormack has not responded, he has already received a generous extension, and the time to serve process in this action has long since passed.

Dismissal, as opposed to a second extension, is warranted by the fact that the Complaint does not specifically allege wrongful conduct by any of the 13 unserved Defendants. Thus, the Complaint provides no basis for concluding that McCormack has plausible claims for relief against these individuals, notwithstanding his failure to timely effect service of process. Accordingly, the Court will recommend that McCormack's claims, if any, against the 13 unserved Defendants be dismissed without prejudice.

2.      **Claims Against Everest**

McCormack alleges that Everest committed malpractice and was negligent in its handling and payment of his TTD benefits. (Dkt. 2 ¶¶ 40–43, 123–125.) He asserts the Court has diversity jurisdiction over these claims under 28 U.S.C. § 1332. (*Id.* ¶ 6.) Everest argues the Court lacks subject matter jurisdiction over these claims, and the Court agrees.

A federal court may not entertain an action over which it has no jurisdiction. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). If the Court determines it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

Federal courts have original jurisdiction over civil actions that either arise under federal law or involve claims for more than $75,000 between parties of diverse citizenship. *See* 28 U.S.C. §§ 1331, 1332(a). Diversity jurisdiction requires complete diversity of citizenship among the parties. *See* 28 U.S.C. § 1332(a); *cf. Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) ("28 U.S.C. § 1332(a) ... applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant.").To adequately plead diversity jurisdiction, the plaintiff must "allege affirmatively the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

The Complaint states that McCormack is a citizen of Idaho, but it does not allege the citizenship of each Defendant. This, alone, is grounds for finding a lack of diversity jurisdiction. *See id.* Further, it is apparent that diversity is lacking between McCormack

and Everest. In "any direct action against the insurer of a policy or contract of liability insurance . . . [where] the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen." 28 U.S.C. § 1332(c)(1)(A). McCormack has sued Everest in its capacity as the workers' compensation insurer of All Valley Concrete, McCormack's employer when he injured his back. (Dkt. 2 ¶ 8.) All Valley Concrete is a citizen of Idaho because it is a business incorporated under the laws of the State of Idaho. 28 U.S.C. § 1332(c)(1). But All Valley Concrete is not a party to this action. Consequently, Everest must be deemed a citizen of Idaho, which destroys complete diversity even if—and this is by no means certain—every other defendant is not a citizen of Idaho.

In addition, McCormack's lawsuit against Everest does not involve a federal question under 28 U.S.C. § 1331. Cases involving federal questions are those cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Everest is not a state actor, and McCormack's claims against it (malpractice and negligence) do not otherwise appear to arise under federal law. This Court found as much when it dismissed identical claims filed by McCormack in 2012. *See McCormack v. Caldwell*, Case No. 1:11-cv-00599-BLW, Dkt. 20 (D. Idaho Dec. 21, 2012) (reviewing factually identical claims, finding no basis for diversity or federal question jurisdiction in amended complaint, concluding further amendment would be futile, and dismissing), *available at* (Dkt. 13-6 at 32). Therefore, the Court lacks original jurisdiction over the subject matter of McCormack's claims against Everest.

Nor does the Court have supplemental jurisdiction over McCormack's claims against Everest. Supplemental jurisdiction is available only if claims outside the Court's original jurisdiction "form part of the same case or controversy" as claims within the Court's jurisdiction. 28 U.S.C. § 1367(a). A claim is part of the same case or controversy if it "shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Although McCormack's § 1983 claims against the IDOC and Corizon Defendants arise under federal law, McCormack's claims against Everest are both temporally and factually distinct from those federal claims.

McCormack's § 1983 claims center on his treatment while incarcerated from 2006 to 2012. His claims against Everest, by contrast, center on Everest's denial of TTD benefits in 2001 and forwarding of TTD checks to the Caldwell law firm from 2001 through part of 2002. The two sets of claims involve different defendants acting at different times under wholly distinct factual and legal circumstances. Consequently, supplemental jurisdiction is not available.

For these reasons, the Court finds it lacks subject matter jurisdiction over McCormack's claims against Everest and will recommend that Everest's motion to dismiss be granted. The exhibits McCormack filed on August 8, 2014 (Dkt. 45) are immaterial to this decision, and, consequently, the Court will also recommend that Everest's Motion to Strike the exhibits be denied as moot.

Leave to amend a complaint dismissed for lack of subject matter jurisdiction is appropriate unless amendment would cause prejudice to the opposing party, is sought in

bad faith, is futile, or creates undue delay. *Johnson v. Mammoth Recreations, Inc.*, 975

F.2d 604, 607 (9th Cir. 1992). Here, amendment would be futile under Rule 15, because

the Court finds McCormack cannot allege a basis for subject matter jurisdiction in

connection with his claims against Everest. This is the second time this Court has reached

this conclusion in a case filed by McCormack against Everest. *See McCormack v.*

*Caldwell*, Case No. 1:11-CV-00599-BLW. Accordingly, the Court will recommend

dismissal of McCormack's claims against Everest without leave to amend.

**3.      Claims Under 42 U.S.C. § 1983**

McCormack alleges two causes of action under 42 U.S.C. § 1983. First, he claims

that unspecified IDOC employees unconstitutionally restricted his access to the courts

during his incarceration. Second, McCormack alleges that unspecified IDOC and Corizon

employees violated his Eight Amendment right to be free from cruel and unusual

punishment by failing to properly treat McCormack's back injury during his

incarceration.

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead facts showing that

the conduct about which he complains was committed by a person acting under the color

of state law, and the conduct deprived him of a federal constitutional or statutory right.

*Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). There is no respondeat superior

liability under § 1983, and the plaintiff must allege and prove that each defendant

participated personally in a constitutional violation or knew of a violation and failed to

correct it. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, McCormack

must link each Defendant to the specific action he alleges is unconstitutional. With these principles in mind, the Court examines McCormack's alleged constitutional claims.

**A.** ***Access to Courts Claim Against the IDOC Defendants***

Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977). The United States Court of Appeals for the Ninth Circuit has recognized two types of access to court claims: "those involving prisoners' right to affirmative *assistance* and those involving prisoners' rights to litigate without active *interference*." *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011). The right to assistance requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. The right applies only to the "pleading stage"—that is, "preparation of a complaint *and* the preparation of any filings necessary 'to rebut the State's arguments when a court determines that a rebuttal would be of assistance.'" *Silva*, 658 F.3d at 1102 n.9 (quoting *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir.1995)). In addition, the right to assistance is limited to the "tools prisoners need 'in order to attack their sentences, [either] directly or collaterally, and in order to challenge the conditions of their confinement.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)) (alteration in original).

Emanating from the First Amendment right to petition the Government and the Fourteenth Amendment right to substantive due process, the right to litigate without active interference is somewhat broader. *Id.* Although it does not require prison officials to provide affirmative assistance, this right protects inmates' ability to "'pursue legal

redress for claims that have a reasonable basis in law or fact.'" *Id.* (quoting *Snyder v. Nolen*, 380 F.3d 279 (7th Cir. 2004)). The right affords prisoners "'the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or *prosecute* court proceedings . . ., or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters.'" *Id.* at 1103 (quoting *Hatfield v. Bailleaux*, 290 F.2d 632, 637 (9th Cir.1961)). The right to be free from undue interference thus extends beyond the pleading stage. *Id.*

But, in both assistance and interference cases, a viable access to courts claim requires a showing of "actual injury" as a result of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Actual injury may be manifest if the alleged denial of access "hindered [McCormack's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [Defendants' actions] that he was unable even to file a complaint." *Id.* at 351. In other words, McCormack must "demonstrate that a nonfrivolous legal claim has been frustrated or was being impeded." *Id.* at 353. It is not sufficient to simply allege a lack of assistance or active interference with a legal claim.

Liberally construed, McCormack's Complaint alleges that IDOC employees provided inadequate legal assistance and actively interfered with his pursuit of legal claims. The assistance claim consists of vague allegations that McCormack faced a "lack of legal resources [and] qualified persons trained in law" to assist him in filing a lawsuit

"to address the worker's compensation back injury" between January 2008 and May 2013. (Dkt. 2 ¶¶ 150–51.) McCormack does not specify which resources were lacking or what type of legal assistance he did not receive. These omissions are problematic because the record before the Court demonstrates that McCormack filed at least five lawsuits during his incarceration.

Only one of these cases, Case No. 1:12-CV-00016-EJL, involved a challenge to McCormack's conditions of confinement. The Court has reviewed the record of that case and finds that McCormack was able to adequately plead his claims. McCormack does not allege anything to the contrary. Nor could he, for the Court allowed the case to proceed beyond the pleading stage. *See McCormack v. Reinke*, Case No. 1:12-CV-00016-EJL, Dkt. 12 (D. Idaho 2012) (allowing discovery to proceed after initial review of the complaint).

Ultimately, in July of 2014, the Court granted summary judgment in the defendants' favor because it found that McCormack had failed to prosecute the case. *Id.* at Dkt. 52. This decision came more than one year *after* McCormack's incarceration ended in May of 2013. Even if he had a right to assistance at this stage in the litigation, additional legal help during McCormack's incarceration would not have changed this result. The summary judgment was the consequence of McCormack's post-incarceration litigation conduct. Therefore, the Complaint fails to state a claim for relief based on inadequate legal assistance in Case No. 1:12-CV-00016-EJL, because the case moved beyond the pleading stage and, in any event, McCormack suffered no actual injury attributable to the alleged lack of assistance.

The other four civil actions McCormack filed during his incarceration where, in essence, attempts to hold the Caldwell Defendants—and, in one case, Everest—liable for the Caldwell Defendants' alleged mishandling of McCormack's workers' compensation benefits. (Dkt. 13-3 to 13-6.) McCormack cannot base an assistance claim on any of these lawsuits, because they are neither direct nor collateral attacks on McCormack's sentence, nor are they challenges to the conditions of his confinement. *See Lewis*, 518 U.S. at 355. Inadequate assistance resulting in the "[i]mpairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. Thus, allegations that the IDOC Defendants allegedly failed to assist McCormack in pleading his claims in these four lawsuits are, as a matter of law, insufficient to state an access to courts claim under § 1983.

With respect to what the Court construes as McCormack's interference claims, the Complaint is somewhat more specific. For instance, McCormack alleges:

> On the 8th Of November of 2011, the Plaintiff tried to file a Civil Complaint with the Federal District Court, for Idaho, and Alan Stewart of the Legal Resource Center for Defendats-4? [sic] Refused to notarize, copy, and mail said Complaint. So the Plaintiff wrote Stewart's supervisor Jeff Kirkman, former Chaplin, and explained Stewart's refusal to allow him use of needed resources. Kirkman, did not reply.

(Dkt. 2 ¶ 154.) Although this complaint was later notarized and mailed, McCormack claims he had to send it to his daughter for copies, which delayed filing of the complaint until December 5, 2011—the date on which Case. No. 1:11-CV-00599-BLW was opened. (*Id*. ¶ 23.) McCormack also contends Stewart "illegally confiscated legal paperwork" and "refused to allow [McCormack] to use the resources need to file a

response to an Initial Review Order . . . ." (*Id.* ¶ 160, 163.) In addition, the Complaint contains allegations that unnamed mailroom staff tampered with or did not deliver McCormack's legal mail.

But McCormack does not claim he suffered an actual injury due to the alleged interference. Nor can the Court discern actual injury from the records of the various cases McCormack filed while incarcerated. Instead, the records demonstrate that McCormack exercised his right to access the courts no less than five times. With the exception of McCormack's first state court action—which was dismissed without prejudice for insufficient service[6]—the remaining cases were dismissed for lack of jurisdiction, on statute of limitations grounds, or for failure to prosecute. These are not dismissals for failure to meet "some technical requirement." *Lewis*, 518 U.S. at 351. Rather, statute of limitations and jurisdictional dismissals turned on substantive defects in the lawsuits. Similarly, Case No. 1:12-cv-00016-EJL, was dismissed on summary judgment due to McCormack's post-incarceration failure to prosecute the case. Consequently, the Complaint provides no reason to believe the alleged interference frustrated a nonfrivolous legal claim or otherwise impaired McCormack's right to court access.

"If no actual injury has resulted, then the rights of the prisoner have not been infringed, and the inquiry need go no further." *Vandelft v. Moses*, 31 F.3d 794, 797 (9th Cir. 1994). McCormack has failed to state an access to courts claim upon which relief can be granted. In addition, the Court finds that amendment of this claim would be futile.

---

[6]     The state court case dismissed for insufficient service (Case No. CV08–00736) was dismissed in April of 2009. (Dkt. 13-3 at 13.) There are no allegations in the Complaint to suggest prison officials interfered with this litigation in any way.

McCormack's state court lawsuits were ultimately found to be time-barred and his federal lawsuits were dismissed due to either lack of subject matter jurisdiction or McCormack's post-incarceration failure to prosecute. Each lawsuit would have been dismissed regardless of any alleged interference by prison officials or employees during the time he was incarcerated. Accordingly, the Court will recommend that McCormack not be granted leave to amend his access to courts claim. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.")

**B.**      ***Eighth Amendment Claim Against the Corizon and IDOC Defendants***

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. To state a claim under the Eighth Amendment, McCormack must show that he was "incarcerated under conditions posing a substantial risk of serious harm," or that he was deprived of "the minimal civilized measure of life's necessities" as a result of a defendant's actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). He must also show that Defendants were deliberately indifferent to his needs. "[D]eliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. To exhibit deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, McCormack essentially alleges that the Corizon and IDOC Defendants were deliberately indifferent to a need for surgery to treat McCormack's back injury. In their motions to dismiss, Corizon and IDOC argue the allegations underlying McCormack's Eighth Amendment claim demonstrate the claims are time-barred by the statute of limitations and otherwise fail to allege a cognizable claim for relief.

### (1) *Statute of Limitations*

Both the IDOC and Corizon Defendants argue that McCormack's Eighth Amendment claim is time-barred. They contend that McCormack knew of a potential claim by February 16, 2007, at the latest, and thus the applicable limitations period expired on February 16, 2009. McCormack has not specifically responded to this argument, but his Complaint contains allegations that defeat it in part.

A § 1983 claim is subject to dismissal under Rule 12(b)(6) if it is not brought within the applicable statute of limitations. *Kimes v. Stone*, 84 F.3d 1121, 1128–29 (9th Cir. 1996). Inasmuch as § 1983 provides a remedy but does not itself confer any substantive rights, the statute of limitation period for filing a § 1983 action is the statute of limitation period for personal injuries in the state where the claim arose. *Johns v. County of San Diego*, 114 F.3d 874, 878 n.2 (9th Cir. 1997). In Idaho, the statute of limitation period for personal injury actions is two years. Idaho Code § 5-219(4).

"Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000). Under federal law, "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v.*

*Lewis*, 174 F.3d 987, 992 (9th Cir. 1999). Thus, the Idaho statute of limitations runs for two years after the claim accrues under federal law.

McCormack filed his Complaint on July 22, 2013. (Dkt. 2.) According to the principles above, any claims that accrued before July 22, 2011, would be time-barred absent a reason for suspending the limitations period. Taking the factual allegations in the Complaint as true, the Complaint demonstrates McCormack knew of and was being treated for his back injury since July of 2001—long before his incarceration began in May of 2006. (Dkt. 2 ¶¶ 137–144.) In addition, McCormack also knew that he might be a candidate for disc replacement surgery by May of 2005. (*Id*. ¶ 142.) On May 19, 2006, McCormack was incarcerated and began receiving treatment for his back "through IDOC." (*Id*. ¶ 144.) On February 16, 2007, McCormack filed a "Notice of Claim against [the Corizon and IDOC Defendants], for failing to properly treat his herniated disc." (*Id*. 146.) This allegation makes it clear that McCormack knew he had a potential claim for the allegedly inadequate medical treatment by February 16, 2007.

However, the inquiry does not end here. The Ninth Circuit recently has clarified the claim accrual analysis in § 1983 cases where a prisoner alleges present harm from past wrongful conduct. *See Pouncil v. Tilton*, 704 F.3d 568, 576–81 (9th Cir. 2012), *cert. denied* 134 S. Ct. 76 (2013). The *Pouncil* court explained that claims based on "the delayed, but inevitable, consequence" of conduct outside the limitations period are time-barred. *Id*. at 581. On the other hand, the *Pouncil* court recognized that claims based on an "independently wrongful, discrete act" inside the limitations period are actionable because the act "begin[s] the running of the statute of limitations anew." *Id*.

By and large, McCormack's Eighth Amendment claim turns on the delayed but inevitable consequences of treatment decisions made in 2008 or earlier. (Dkt. 2 ¶¶ 145–147.) The Complaint includes precisely one allegation of a wrongful act related to medical treatment after July 22, 2011. McCormack contends that, in October of 2012, unspecified defendants "simply lied to [him] by telling him there was no injury which required surgery." (*Id*. ¶ 147.) Although any claim premised on prison officials' alleged failure to surgically repair McCormack's back accrued by February of 2007, this alleged lie is an independently wrongful, discrete act. *See*, *e.g*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). An Eighth Amendment claim premised on the alleged lie is not time-barred because the act occurred within the limitations period—that is, after July 22, 2011. On the other hand, claims related to the consequences of conduct before July 22, 2011, have missed the statute of limitation deadline.

If a plaintiff cannot show that his claim accrued during the statute of limitation period, he still may file a lawsuit beyond the statute of limitation deadline if he can show the statute of limitation should have been tolled (or stopped) during the period within which he should have filed the lawsuit. In a civil rights case such as this, state law tolling provisions apply unless important federal policy will be undermined. *See Johnson v. Ry. Express Agency, Inc*., 421 U.S. 454, 464–65 (1975).

The Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007). Idaho statutorily tolls the limitations period for a person's minority status or insanity. Idaho Code § 5-230. Neither statutory basis for tolling applies here.

Absent a reason for statutory tolling, Idaho law recognizes that equitable estoppel is also available in appropriate cases. While equitable estoppel "does not 'extend' a statute of limitation," it works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co., v. Chemetics Int'l, Inc.*, 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*. at 1041.

The facts alleged in McCormack's Complaint do not support equitable estoppel under Idaho law. The Complaint indicates that McCormack knew the nature of his back injury and was interested in pursuing surgery years before he was incarcerated. (Dkt. 2 ¶ 55.) Further, while McCormack was incarcerated, he received the results of at least two

back MRIs that "verified the back injuries." (*Id.* ¶ 147.) Thus, McCormack knew the nature of his back injury and the nature of the treatment he was receiving. For these reasons, he cannot establish that he "did not know or could not discover the truth," rendering equitable estoppel inapplicable to his Eighth Amendment claims. In sum, the statute of limitations bars McCormack's Eighth Amendment cause of action, except for a claim premised on the alleged lie in October of 2012.

### (2) *Failure to State an Eighth Amendment Claim*

Even so, McCormack has failed to state a claim upon which relief can be granted in connection with the alleged lie. To state a claim for inadequate medical care under the Eighth Amendment, McCormack must show prison officials' or prison medical providers' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In the medical context, a conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted).

With regard to the alleged October 2012 lie, the Complaint does not allege deliberate indifference on the part of any specific defendant. Instead, McCormack vaguely alleges that, during October of 2012, the Corizon Defendants "simply lied to

Plaintiff by telling him there was no injury which required surgery." (Dkt. 2 ¶ 147.) As for the IDOC Defendants, McCormack claims they "refused to enforce any greater medical practices than what was being offered and in some cases defended the cruel and unusual treatment of the Plaintiff, by permitting [the Corizon Defendants], to continue their medical non curative practices on the Plaintiff." (*Id.* ¶ 148.)

These allegations are too general to "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). Because McCormack has not alleged that a particular defendant knew he needed back surgery and then lied to him about it or enforced a policy or custom allowing such deception, McCormack has not stated a claim for deliberate indifference to a serious medical need. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) ("[T]he prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"). Therefore, McCormack's Eighth Amendment claims are subject to dismissal under Rule 12(b)(6). However, the Court will recommend that McCormack be granted leave to amend his Eighth Amendment claim in accordance with the instructions below.

### (3)    *Instructions for Amending the Eighth Amendment Claim*

Leave to amend a deficient complaint should be freely given to pro se litigants unless the Court determines that amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1128–30 (9th Cir. 2000). McCormack may be able to state an Eighth Amendment claim in connection with his allegation that, in October of 2012, someone lied to him

about the need for surgery to address his back injury. Accordingly, the Court will recommend that McCormack be granted limited leave to file an amended complaint subject to the following instructions.

If McCormack chooses to amend his Eighth Amendment claim, he must demonstrate how the actions complained of have resulted in a deprivation of his constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). McCormack must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient . . . ." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)). Rather, the amended complaint must allege in specific terms the following: (1) the names of the persons who caused or personally participated in causing the alleged deprivation of his constitutional rights or the particular governmental policy or custom which caused the deprivation of his constitutional rights; (2) the dates on which the conduct of each defendant allegedly took place; and (3) the specific conduct or action McCormack alleges is unconstitutional.

Further, any amended complaint must contain all of McCormack's allegations in a single pleading; it cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of

course or upon a motion to amend, must reproduce the entire pleading as amended"); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint). McCormack shall set forth each different factual allegation in a separate numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Amended Complaint." McCormack's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court. If McCormack files an amended complaint, he must also file a "Motion to Review the Amended Complaint."

Because McCormack's claims against the Caldwell Defendants have been dismissed and his claims against Everest are subject to dismissal without leave to amend, the amended complaint should not include allegations against Everest or the Caldwell Defendants. Nor should the amended complaint contain allegations concerning McCormack's access to the courts, because amendment of that claim would be futile. With respect to the Eighth Amendment claim, the amended complaint should only include factual allegations that would state a claim regarding the alleged lie in October 2012. Claims premised on the other medical treatment alleged in the Complaint are time-

barred and should not be included in the amended complaint. Failure to comply with these instructions may result in dismissal of this action without further notice.

**RECOMMENDATION**

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

1) Defendant Everest National Insurance Company's Motion to Dismiss (Dkt. 30) be **GRANTED**;

2) The Motion to Dismiss filed by Defendants Shirley Audens, Joseph Cardona, Rona Siegart, Theresa Baldridge, Christina Boulay, Randy Blades, Jill Whittington, Jeff Kirkman, Garrett Coburn, Alan Stewart, David Wright, Howard Yordy, Stan House, Sabina Ramirez, and Terry Rosenthal (Dkt. 33) be **GRANTED**;

3) The Motion to Dismiss filed by Defendants April Dawson, Catherine Whinnery, and William Poulson (Dkt. 36) be **GRANTED**;

4) Defendant Everest's Motion to Strike (Dkt. 47) be **DENIED AS MOOT**;

5) Any claims against Defendants Dave Foss, Debra Frost, Larry Hynes, Jan Epp, Anita Travis, Scott Lossmann, Debbie Richardson, Tina Williams, Thomas Kimberly, Erin Aldape, Pam Sonen, Gary Barrier, and Johanna Smith be **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 4(m); and

6) Plaintiff Robert McCormack be granted leave to amend only his 42 U.S.C. § 1983 Eighth Amendment claim against one or more of the Corizon or IDOC

Defendants in accordance with the instructions above and within 20 days of the Court's Order on this Report and Recommendation.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **January 06, 2015**

Honorable Candy W. Dale
United States Magistrate Judge